IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| R. WAYNE KLEIN, as Receiver,<br><br>Plaintiff,<br><br>v.<br><br>ANALEE MCDONALD, and JOHN DOES 1-5,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br><br>Case No. 2:13-CV-498 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment. Defendant has failed to respond and the time for doing so has now passed. For the reasons discussed below, the Court will grant Plaintiff's Motion.

I.  BACKGROUND

On June 25, 2012, the Securities and Exchange Commission (the "SEC") filed a Complaint against National Note of Utah, LC ("National Note") and Wayne LaMar Palmer ("Palmer") commencing a civil enforcement action (the "Civil Enforcement Action"), alleging that Palmer operated National Note and its affiliated entities (the "NNU Enterprise") as a Ponzi scheme and asserting various causes of action for securities fraud. That same day, the Court in the Civil Enforcement action appointed Plaintiff as the receiver for National Note and at least 41 affiliated entities, and the assets of Palmer. The Receiver is charged with, among other things, investigating the NNU Enterprise, and he is authorized to bring suit to recover property of the Receivership Estate.

On June 19, 2013, the Receiver commenced the above-captioned case against Defendant. McDonald was a National Note investor. In total, McDonald transferred $21,400.00 to National Note. National Note transferred $31,683.44 to McDonald. National Note transferred $10,283.44 more to McDonald than the amount that McDonald transferred to National Note. The Receiver seeks to recover the $10,283.44 that National Note paid to Defendant prior to the commencement of the Civil Enforcement Action over and above the amount of the principal investment that Defendant made in National Note (the "False Profits").

Plaintiff has presented evidence that National Note was a Ponzi scheme. National Note raised funds from investors by issuing promissory notes. From at least 1998 through the time that Defendant received the last transfer in 2010 (the "Applicable Period"), the returns paid to National Note investors were not financed through the success of a business, but were paid from sums obtained from other investors. Throughout the Applicable Period, transfers made by National Note to its investors, including the Defendant, were sourced from cash raised from other investors.

National Note had additional characteristics of a Ponzi scheme. National Note promised large, consistent returns, with little or no risk to its investors. National Note generally made payments to its investors through 2011, thus creating the false impression that profits were being earned, and thereby attracting additional investors to the scheme. National Note and the NNU Enterprise were insolvent from at least 1998 through the commencement of the Civil Enforcement Action in June 2012, including the entire Applicable Period.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1]  In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[2]  The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[3]  Pursuant to Rule 56(e), since Defendant has failed to properly address Plaintiff's assertions of fact, the Court may consider the facts undisputed for the purposes of this Motion and may grant summary judgment if the Motion and supporting materials show that Plaintiff is entitled to judgment.

## III.  DISCUSSION

Plaintiff seeks summary judgment on his first, second, third, and fifth causes of action. Plaintiff's first, second, and third causes of action seek to avoid fraudulent transfers under various portions of the Utah Fraudulent Transfer Act ("UFTA").  Plaintiff's fifth cause of action asserts a claim for unjust enrichment.  The Court will discuss each cause of action in turn.

A.  FIRST CAUSE OF ACTION

Section 25-6-5(1)(a) defines a fraudulent transfer as follows:

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made

---

[1] Fed. R. Civ. P. 56(a).

[2] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[3] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
(a) with actual intent to hinder, delay, or defraud any creditor of the debtor[.]

Section 25-6-8(1)(a), in turn, provides for the avoidance of the False Profit fraudulent transfers, stating as follows:

(1) In an action for relief against a transfer or obligation under this chapter, a creditor . . . may obtain:
(a) avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim[.]

Finally, § 25-6-9(2) allows the Receiver to recover the avoided fraudulent transfers from the Defendant as the first transferee of the False Profits, providing: "[T]o the extent a transfer is voidable in an action by a creditor under Subsection 25-6-8(1)(a), the creditor may recover judgment for the value of the asset transferred . . . ."

"Under the UFTA, a debtor's actual intent to hinder, delay, or defraud is conclusively established by proving that the debtor operated as a Ponzi scheme."[4] Thus, "once it is established that a debtor acted as a Ponzi scheme, all transfers by that entity are presumed fraudulent."[5]

In this case, the undisputed facts show that National Note was operated as a Ponzi scheme during the Applicable Period. Thus, the False Profits may be avoided under § 25-6-5(1)(A) and avoided and recovered from Defendant under §§ 25-6-8(1)(a) and 25-6-9(2). Therefore, summary judgment is proper on Plaintiff's first cause of action.

---

[4] *SEC v. Madison Real Estate Grp., LLC*, 647 F. Supp. 2d 1271, 1279 (D. Utah. 2009); *see also Donell v. Kowell*, 533 F.3d 762, 770 (9th Cir. 2008) ("The mere existence of a Ponzi scheme is sufficient to establish actual intent to defraud.") (quotation and alteration omitted).

[5] *Wing v. Dockstader*, 482 F. App'x 361, 363 (10th Cir. 2012).

B.	SECOND CAUSE OF ACTION

Section 25-6-5(1)(b) defines a transfer as fraudulent as follows:

(1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
. . . .
(b) without receiving a reasonably equivalent value in exchange for the transfer or obligation; and the debtor:
. . . .
(ii) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

Under this section, a transfer is fraudulent if it is not made for reasonably equivalent value and the elements of subsection (b)(ii) are shown. Transfers that are fraudulent under § 25-6-5(1)(b) are avoidable and recoverable from the initial transferee under §§ 25-6-8(1)(a) and 25-6-9.

There is no evidence that National Note received a reasonably equivalent value in exchange for the monetary transfers to Defendant in excess of Defendant's principal investment. "Where causes of action are brought under UFTA against Ponzi scheme investors, the general rule is that to the extent innocent investors have received payments in excess of the amounts of principal that they originally invested, those payments are avoidable as fraudulent transfers."[6] "If investors receive more than they invested, '[p]ayments in excess of amounts invested are considered fictitious profits because they do not represent a return on legitimate investment activity.'"[7]

---

[6] *Donell*, 533 F.3d at 770.

[7] *Id.* at 772 (quoting *In re Lake States Commodities, Inc.*, 253 B.R. 866, 872 (Bankr. N.D. Ill. 2000)).

Further, because National Note was operated as a Ponzi scheme, it "[i]ntended to incur, or believed or reasonably should have believed that [it] would incur, debts beyond [its] ability to pay as they became due."[8] Therefore, Plaintiff is entitled to summary judgment on his second cause of action.

C.   THIRD CAUSE OF ACTION

Section 25-6-6(1) defines a fraudulent transfer as follows:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if:
> (a) the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation; and
> (b) the debtor was insolvent at the time of or became insolvent as a result of the transfer or obligation.

Under this section, a transfer is fraudulent if it is not made for reasonably equivalent value and the transferor was insolvent or became insolvent as a result of the transfer. Transfers that are fraudulent under § 25-6-6(1) are avoidable and recoverable from the initial transferee under §§ 25-6-8(1)(a) and 25-6-9(2).

As discussed above, the False Profits National Note transferred to Defendant are not for reasonably equivalent value. In addition, Ponzi schemes are insolvent by definition.[9] Further, Plaintiff has presented undisputed evidence showing that National Note was insolvent during the Applicable Period, as defined by UFTA § 25-6-3. Therefore, Plaintiff is entitled to judgment on this cause of action.

---

[8] *Donell*, 533 F.3d at 770.

[9] *Klein v. Cornelius*, ---F.3d---, 2015 WL 3389363, at *7 (10th Cir. May 27, 2015).

D.  FIFTH CAUSE OF ACTION

Unjust enrichment requires the Receiver to prove (1) a benefit conferred on Defendant; (2) an appreciation or knowledge by Defendant of the benefit; and (3) the acceptance or retention by Defendant of the benefit under such circumstances as to make it inequitable for Defendant to retain the benefit without payment of its value.[10]

Plaintiff has shown that a benefit was conferred on Defendant and that Defendant had an appreciation or knowledge of that benefit. In addition, Plaintiff has presented evidence that at least 554 investors received less than the amount they invested from National Note, with a large number receiving absolutely no return. The Receiver anticipates that allowable claims against the Receivership Estate for net principal losses will exceed $59.4 million. The Receiver anticipates that returns for those investors who have allowable claims will be far less than 100% of their principal investment. Under these circumstances, it would be inequitable for Defendant to retain the benefit. Therefore, summary judgment on Plaintiff's fifth cause of action is appropriate.

## IV.  CONCLUSION

It is therefore

ORDERED that Plaintiff's Motion for Partial Summary Judgment (Docket No. 19) is GRANTED.

---

[10] *Rawlings v. Rawlings*, 240 P.3d 754, 763 (Utah 2010).

DATED this 18th day of June, 2015.

BY THE COURT:

_____
Ted Stewart
United States District Judge